# In the United States Court of Federal Claims

No. 08-133 C
(Filed Under Seal: May 29, 2009)
(Reissued: July 22, 2009)[*]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| GLOBAL COMPUTER ENTERPRISES, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | Bid Protest; Motion to Supplement |
| v. | * | the Administrative Record; <u>Esch</u>; |
| | * | <u>Axiom Resource Management, Inc.</u>; |
| THE UNITED STATES, | * | Motion to Strike; Lay Opinion |
| | * | Evidence; Hearsay; Hearsay |
| Defendant, | * | Exceptions; Fed. R. Evid. 403, 701, |
| | * | 803; Cumulative Evidence |
| and | * | |
| | * | |
| QSS GROUP, INC., | * | |
| | * | |
| Defendant-Intervenor. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>Jonathan J. Frankel</u>, Washington, DC, for plaintiff.  John P. Janecek, Ariel B. Waldman, Timothy R. Schnabel, and Sara K. Kasper, of counsel.

<u>William P. Rayel</u>, United States Department of Justice, Washington, DC, for defendant.

<u>J. Scott Hommer, III</u>, Vienna, VA, for Defendant-Intervenor.  William L. Walsh, Jr., Keir X. Bancroft, Patrick R. Quigley, and Peter A. Riesen, of counsel.

## RULING ON PLAINTIFF'S MOTION TO SUPPLEMENT
## THE ADMINISTRATIVE RECORD

**SWEENEY**, Judge

Before the court are Plaintiff's Motion to Supplement the Administrative Record ("motion to supplement"); Intervenor QSS's Motion to Admit Harm Declaration of William R. Bowen and to Strike Improper Lay Opinion Testimony From Declarations in Support of Plaintiff's Motion for Preliminary Injunction and Application for Restraining Order ("motion to

---

[*] This reissued decision incorporates the redactions proposed by the parties on June 24, 2009, as well as updated citations.  Redactions are indicated with a bracketed ellipsis ("[. . .]").

strike"); and Intervenor QSS Group, Inc.'s Renewed Motion to Strike Plaintiff's Extra-Record Evidence ("renewed motion to strike"). Also before the court, to the extent that they address plaintiff's motion to supplement, are Defendant's Motion to Dismiss or, in the Alternative, Motion for Judgment Upon the Administrative Record, and Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction and Application for Temporary Restraining Order ("government's motion and opposition"); and Memorandum in Support of Intervenor QSS Group, Inc.'s Motion to Dismiss for Lack of Jurisdiction, Opposition to Plaintiff's Motion for Preliminary Injunction and Application for Temporary Restraining Order and, Alternatively, Motion for Judgment on the Administrative Record ("QSS's motion and opposition").[1]   In this bid protest, plaintiff Global Computer Enterprises, Inc. ("GCE") contests the issuance of two modifications to a task order awarded to defendant-intervenor QSS Group, Inc. ("QSS") by the United States Coast Guard ("Coast Guard") to perform certain software engineering and technical services at the Coast Guard's Operations Systems Center ("OSC") in Kearneysville, West Virginia.  GCE maintains, among other things, that the Coast Guard's issuance of Modifications 30 and 32 to the Systems Engineering and Technical Services ("SETS") II task order, which involved the provision and maintenance of audit-supporting federal financial management systems, exceeded the scope of the SETS II task order, thereby resulting in an unlawful standalone sole-source procurement that extended the underlying Information Technology Omnibus Procurement ("ITOP") II contract beyond its ordering period.  GCE seeks to supplement the agency-filed record to include information it argues is not–and, in fact, could not be–included within the current record before the court.  For the reasons discussed below, GCE's motion to supplement is granted, QSS's motion to strike is granted in part and denied in part, and QSS's renewed motion to strike is denied.  To the extent that they address GCE's motion to supplement, the government's motion and opposition and QSS's motion and opposition are denied in part.

## I.  GCE'S MOTION TO SUPPLEMENT

In its motion to supplement, GCE seeks to include "documents and declarations beyond the limited record filed by the agency."  Pl.'s Mot. Supplement Administrative R. ("Pl.'s Mot.") 2 (citing Frazier v. United States, 79 Fed. Cl. 148, 152 (2007)).  Specifically, GCE requests that the court incorporate "all documents and declarations" contained in the two-volume appendix

---

[1]  The court also considers the following briefs, to the extent that they address plaintiff's motion to supplement: Defendant's Opposition to Plaintiff's Cross-Motion for Judgment Upon the Administrative Record, Plaintiff's Motion for a Permanent Injunction, and Plaintiff's Motion to Supplement the Administrative Record, and Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss or, in the Alternative, Motion for Judgment Upon the Administrative Record ("government's opposition and reply"); and QSS Group's Opposition to Plaintiff's Motions (1) for Judgment on the Administrative Record, (2) for Permanent Injunction, and (3) to Supplement the Administrative Record, and Reply in Support of QSS Group's Motion to Dismiss and, Alternatively, for Judgment on the Administrative Record ("QSS's opposition and reply").

accompanying its motion for preliminary injunction and temporary restraining order, as well as "all documents and declarations" contained in the appendix accompanying its cross-motion for judgment on the administrative record and motion for permanent injunctive relief.[2]  Id.  The court notes at the outset that it is possible that many of the documents contained in GCE's appendix are already part of the administrative record.  See Pl.'s Consent Mot. 2 n.1 ("GCE in its March 6[, 2008] memorandum provided citations to both the exhibit and page number of the accompanying Appendix, which was filed eight days before there was a proposed administrative record in this case.").  Therefore, the court addresses GCE's motion to supplement to the extent that its proffered documents and declarations are not already part of the agency-filed record.

Among the documents GCE seeks to incorporate into the administrative record are declarations of several GCE employees.  See, e.g., Pl.'s App. 1-46 (containing declarations of GCE's president and CEO, chief strategy officer, and director of financial systems), 922-85 (containing supplemental declarations of GCE's president and CEO, chief strategy officer, and director of financial systems, as well as declarations from GCE's United States Secret Service TOPS Project Manager and a former GCE project manager).  Additionally, GCE seeks to incorporate various other materials, including previous federal financial systems solicitation awards, see Pl.'s App. 302-504, and other legal, regulatory, and agency documents.[3]  According to GCE, "[t]here is no analog to these materials in the Government-filed administrative record . . . ."[4]  Pl.'s Mot. 3.

─────────────────────

[2]  Because GCE's appendices are paginated consecutively, see GCE's App. Mem. P. & A. Supp. Pl.'s Mot. Prelim. Inj. & Application TRO; GCE's Supplemental App. Mem. Supp. Pl.'s Cross-Mot. J. Administrative R. & Mot. Perm. Injunctive Relief; App. Mem. Pl. Global Computer Enterprises, Inc. Filed Pursuant Ct.'s Apr. 7, 2008 Order, the court considers those materials submitted with its motion for preliminary injunction and temporary restraining order, its cross-motion for judgment on the administrative record and motion for permanent injunctive relief, and its memorandum filed pursuant to the court's April 7, 2008 order as one appendix, hereinafter cited as "Pl.'s App."

[3]  For example, GCE's appendix contains the following materials: Audit Remediation Strategic Plan Executive Summary, Pl.'s App. 986-92; a statement by Department of Homeland Security officials before the Senate Committee on Homeland Security and Governmental Affairs, id. at 993-99; GCE's Background Investigation Procedure, id. at 1000-03; GCE's Background Investigation Policy, id. at 1004-06; and excerpts from the administrative record.

[4]  Following a hearing on GCE's motion for preliminary injunction, the court permitted the parties to file additional declarations "relating to the risks of harm to the parties."  Order, Apr. 7, 2008.  Accordingly, GCE submitted three supplemental declarations with its memorandum.  See Pl.'s App. 1007-30.  As QSS notes, these supplemental declarations were not included with GCE's motion.  See Intervenor QSS Group, Inc.'s Renewed Mot. Strike Pl.'s Extra-Record Evid. ("Def.-Intervenor's Renewed Mot. Strike") 4 n.8.  Nevertheless, QSS objects to two of these supplemental declarations and emphasizes that they "may be considered only with

**A. GCE's Arguments**

GCE asserts in this case that Modifications 30 and 32 to the SETS II task order are unlawful. Compl. ¶¶ 32, 35, 50-63. It relies, in part, upon <u>AT&T Communications, Inc. v. Wiltel, Inc.</u>, 1 F.3d 1201 (Fed. Cir. 1993), and <u>CCL, Inc. v. United States</u>, 39 Fed. Cl. 780 (1997), in support of its argument that supplementation is appropriate in this case. In <u>AT&T Communications, Inc.</u>, the United States Court of Appeals for the Federal Circuit ("Federal Circuit") determined that "[a] modification generally falls within the scope of the original procurement if potential bidders would have expected it to fall within the contract's changes clause." 1 F.3d at 1205. GCE emphasizes that the <u>CCL, Inc.</u> court's interpretation of the Federal Circuit's decision in <u>AT&T Communications, Inc.</u> indicated that in order to reach this determination, courts must engage in an objective inquiry "viewed from the perspective of potential bidders for the first procurement." 39 Fed. Cl. at 791. Here, GCE asserts that "the agency-filed 'administrative record would not, and cannot,' contain the information central to resolving the controversy," Pl.'s Mot. 2 (quoting <u>Prot. Strategies, Inc. v. United States</u>, 76 Fed. Cl. 225, 234 (2007)), and that supplementation would provide the court with "information essential to resolving this case," namely the perspective of potential bidders at the time of the original SETS II procurement, <u>id.</u> at 4.

In its complaint, GCE alleges that audit-supporting federal financial management system services differ from mission and administrative support information technology ("IT") services, which it maintains were provided under the SETS II task order. Compl. ¶ 10. GCE claims that audit-supporting federal financial management system services are "bid out in different procurements," are "bid and worked on by different groups of contractors," <u>id.</u>, and therefore comprise a niche industry for a "small pool of companies [that] regularly compete as prime contractors . . . for federal financial systems work," <u>id.</u> ¶ 15. According to GCE, the alleged existence of this niche market warrants supplementation of the record in order to ascertain the perspective of potential bidders because

> [t]he central question here is whether Modifications 30 and 32 to the [SETS II] task order exceeded the scope of that order, thereby working an unlawful standalone sole-source procurement beyond the ordering period of the underlying ID/IQ contract. To answer that question, the Court must ask whether "potential bidders" for [the] SETS II [task order] "would have expected" the financial management systems IT work encompassed in Modifications 30 and 32 to fall within the scope of the task order. This inquiry is necessarily an "objective one viewed from the perspective of potential bidders for the first procurement."

_____

regard to the risks of harm." <u>Id.</u> QSS previously indicated that "it had no objection, in principle, to the submission of declarations on harm . . . ." <u>Id.</u> at 1 n.2. Indeed, QSS requests that the court admit its own harm declaration of William R. Bowen. Intervenor QSS's Mot. Admit Harm Decl. William R. Bowen & Strike Improper Lay Opinion Testimony Decls. Supp. Pl.'s Mot. Prelim. Inj. & Application Restraining Order ("Def.-Intervenor's Mot. Strike") 1-2.

> The Government-filed administrative record "would not, and cannot" contain the information needed to make this determination.  Whatever that filed record may say about the Coast Guard's perspective on [the] SETS II [task order], it says nothing about what perspective "potential bidders" in the broader marketplace would have regarding the procurement.  By definition, the evidence most relevant to that inquiry will be evidence outside the Coast Guard's own materials . . . .

Pl.'s Mot. 2 (citations omitted); accord Pl.'s Opp'n Intervenor's Mot. Strike ("Pl.'s Opp'n") 5 (arguing that "one of the key issues" presented in this case is "whether the SETS II [task order] solicitation would have reasonably been seen by potential bidders as encompassing financial systems work" and emphasizing that in order "[t]o resolve this issue, the Court needs information regarding the expectations that the potential bidders would have had based on prior procurements").  In order to ascertain what a potential bidder would have understood, GCE argues that the court must "look at what information potential bidders would have had; not simply what documents were in front of the agency."  Perm. Inj. Hr'g Tr. 20:5-7, May 28, 2008.  To that end, GCE emphasizes that

> what the Court has to answer here is not anything about the agency's own decisionmaking process–we all agree on what the agency did and did not do–but what would potential bidders in 2005 have understood the SETS [II task order] solicitation and the prospect of changes in the performance of [the] SETS [II task order] over time to have included[.]  That's not anything answered by the agency's internal documents or audit files.  That's something where you do need to go outside and to see what it is that the people, the community of potential bidders, thinks.

Prelim. Inj. Hr'g Tr. 90:18-91:4, Mar. 26, 2008; see also CCL, Inc., 39 Fed. Cl. at 790 (admitting all of the plaintiff's proffered documents and affidavits where "the government is being sued for inaction–failing to use the competitive process"–because there exists "less reason to presume that the record assembled by the agency is presumptively complete").

GCE maintains that the evidence it proffers aids in determining what prospective bidders "would know [about] the structure of the industry, and the fact that only a limited niche market of compan[ies] can compete and does compete for audit supporting financial systems work."  Perm. Inj. Hr'g Tr. 18:2-5.  It emphasizes that these prospective bidders "would know that for eight years, the Coast Guard itself bid financial systems IT work on a completely separate track from all other IT work."  Id. 18:6-9.  According to GCE, its "solicitation and declaration evidence confirm[s] that the community of potential bidders would not have understood [the] SETS II [task order] to ever include, then or in the future, support work for federal financial management systems.  It is appropriate to supplement the administrative record to include that evidence."  Mem. Pl. Global Computer Enterprises, Inc. Filed Pursuant Ct.'s Apr. 7, 2008 Order ("Pl.'s Mem.") 21; see also Pl.'s Opp'n 5 (noting that the declarations of GCE's personnel

provide "some general descriptions" of the types of procurements in which they have participated or observed and are therefore helpful to the court's determination).

Finally, GCE argues that supplementation of the administrative record is supported by Esch v. Yeutter, 876 F.2d 976 (D.C. Cir. 1989),[5] wherein the United States Court of Appeals for the District of Columbia Circuit recognized "a number of exceptions countenancing use of extra-record evidence."  Pl.'s Mot. 3.  These exceptions include:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

Esch, 876 F.2d at 991 (citing Steven Stark & Sarah Wald, The Failed Attempts to Limit the Record in Review of Administrative Action, 36 Admin. L. Rev. 333, 345 (1984)).  GCE states that three exceptions identified by the Esch court–numbers four, six, and eight–apply in this case,[6] Pl.'s Mot. 3, and emphasizes that the case law "make[s] clear that [the court may] use

---

[5] Briefing on GCE's motion to supplement concluded prior to the Federal Circuit's ruling in Axiom Resource Management, Inc. v. United States, 564 F.3d 1374 (Fed. Cir. 2009).

[6] According to GCE, exception number 4 is applicable in the instant case because

> the core legal inquiry into how potential bidders would have viewed the SETS II [task] order in 2005[] cannot be understood without GCE's evidence of the specialized and separate market for federal financial management systems supporting IT work and the virtually universal practice across federal agencies of procuring such work separately from other kinds of IT work.

Pl.'s Mot. 3.  Exception six applies here, according to GCE, because other cases involving agency inaction, including CCL, Inc., have permitted supplementation.  Id.; see also 39 Fed. Cl. at 790 (permitting supplementation of the administrative record where the government was being sued for inaction).  Additionally, exception eight is relevant here, GCE states, because it seeks injunctive relief.  Pl.'s Mot. 3.

discretion to supplement the record, . . . especially when the question at hand is something that is to be found outside of the record that the agency assembled,"[7] Perm. Inj. Hr'g Tr. 19:20-25.

## B. The Government's and QSS's Objections

The government states that it "is not arguing that . . . the record has to be absolutely firmly set in stone." Prelim. Inj. Hr'g Tr. 44:22-25.  Nevertheless, it objects to GCE's attempts to present evidence of "'trade practice and custom' to prove that a financial management system could not be added to the SETS II task order."  Def.'s Opp'n Pl.'s Cross-Mot. J. Administrative R., Pl.'s Mot. Perm. Inj., & Pl.'s Mot. Supplement Administrative R., & Def.'s Reply Pl.'s Opp'n Def.'s Mot. Dismiss or, Alternative, Mot. J. Administrative R. ("Def.'s Opp'n & Reply") 16. Additionally, the government challenges GCE's proffered declarations, which it maintains "do not illuminate the language of the SETS II task order."  Id. at 19.

First, the government argues that GCE "misapplies" the standard–what potential bidders would have understood the SETS II task order to include–"when it argues that 'it is impossible to answer that question without reference to 'extrinsic' evidence concerning those bidders' understanding.'"  Id. at 17 (quoting Pl.'s Cross-Mot. J. Administrative R. & Mot. Perm. Injunctive Relief 20).  Rather, the government emphasizes that a reasonable potential bidder "will both start and end its inquiry with the language of the solicitation itself" when determining the scope of a proposed contract.  Id.  Here, the government notes that "we[,] in fact[,] have the record evidence from the ITOP II contract that shows that a system does include financial

---

[7] Nevertheless, GCE acknowledges that

[e]ven without supplementation, . . . the Government's proposed administrative record, together with any documents of which the Court takes judicial notice, provide[s] a fully adequate basis for [the] conclusion [that the community of potential bidders would not have understood the SETS II task order to include audit-supporting federal financial management system services].  That record includes, but is not limited to, SETS II's text, the Modifications themselves, evidence of GCE's prior contracts for financial management systems support, and evidence of the Coast Guard's history of procuring federal financial management systems on a separate track from [the] SETS II [task order].

Pl.'s Mem. 21-22.  Indeed, QSS emphasizes that the "extensive Record gives the Court more than adequate material to answer" whether "potential offerors could reasonably have anticipated that financial management IT system services could be included within [the] SETS II [task order]."  Def.-Intervenor's Renewed Mot. Strike 10.  It therefore characterizes GCE's acknowledgment quoted above as a "concession."  Id. at 5.  But see Mem. Pl. Global Computer Enterprises, Inc. Opp'n QSS Group, Inc.'s Renewed Mot. Strike ("Pl.'s Opp'n Mem.") 1 ("[T]here has been no 'concession,' and QSS's strained efforts to manufacture one are untenable.").

management systems."[8]  Prelim. Inj. Hr'g Tr. 44:2-4; accord Def.'s Opp'n & Reply 18 ("[T]here is record evidence that the generic term 'system' does include financial management systems."), 20 ("[E]xtrinsic evidence in the record supports the Government's position that 'systems,' as that term is used in the IT industry, in a broad procurement, encompasses any type of computer system, including financial management systems.").  Thus, the government asserts, a contracting party is precluded from "'invok[ing] trade practice and custom to create an ambiguity where a contract was not reasonably susceptible of differing interpretations at the time of contracting.'" Def.'s Opp'n & Reply 17 (quoting Metric Constructors, Inc. v. NASA, 169 F.3d 747, 752 (Fed. Cir. 1999)).

Second, the government argues that GCE's proffered solicitations from other government agencies should not be considered by the court because "the record should consist of . . . documents that were relied upon by the contracting officer or documents that [are] otherwise related to the contract at issue."[9]  Prelim. Inj. Hr'g Tr. 44:17-20.  According to the government, seventeen of the eighteen solicitations GCE seeks to incorporate into the administrative record "are solicitations solely for IT support for financial management systems.  This does nothing to illuminate the meaning of the term 'computer system' as used in the SETS II task order.  All this demonstrates is that IT support for financial management systems is often procured separately . . . ."  Def.'s Opp'n & Reply 19.  Moreover, the government claims that GCE's evidence is incomplete, Prelim. Inj. Hr'g Tr. 45:17-19 ("[GCE] put in some documents showing financial management systems procurements"), and speculates that "there could be plenty of documentation out there showing that other IT systems typically are procured there," id. 45:19-21.

QSS notes that courts will "occasionally permit supplementation of the Administrative Record to fill a gap."  QSS Group's Opp'n Pl.'s Mots. (1) J. Administrative R., (2) Perm. Inj., & (3) Supplement Administrative R., & Reply Supp. QSS Group's Mot. Dismiss &, Alternatively, J. Administrative R. ("Def.-Intervenor's Opp'n & Reply") 25 (citing Precision Standard, Inc. v. United States, 69 Fed. Cl. 738, 747 (2006)).  QSS argues that in this case, GCE "provides no information that would fill any gap as to what the Contracting Officer considered."  Id.  Instead, QSS asserts, GCE has requested that the court "examine what potential offerors would have considered or what other agencies might have done in their financial IT procurements," id., an inquiry that "would only be relevant if the Court were first to find that the SETS II task order

_____

[8]  The government states that "if GCE can prove, through extrinsic evidence, that the generic term 'computer system,' as that term is used in the IT industry, does not include a 'financial management system,' then GCE could potentially prevail.  Unfortunately for GCE, it has presented no such evidence . . . ."  Def.'s Opp'n & Reply 18.

[9]  Nevertheless, the government acknowledges that with respect to the "numerous solicitations that [GCE] submitted stretching back over approximately 18 years," the "standard for [admitting such] documentation is probably not quite as high . . . ."  Prelim. Inj. Hr'g Tr. 44:12-15.

RFP terms were ambiguous," id. at 26.  Thus, QSS accuses GCE of having "no hesitation to go into the merits in their declarations," particularly with regard to what GCE "think[s] exists out there in the market, whether it be financial IT or just IT or what have you."  Prelim. Inj. Hr'g Tr. 78:12-16.  Furthermore, QSS argues that supplementation of the administrative record is unnecessary because GCE "admits that this case is susceptible to Record review" and, as such, the court must "limit its review to the Record already before it . . . ."  Def.-Intervenor's Renewed Mot. Strike 7.

If the court "open[s] th[e] door" to supplementation, then QSS questions what information is appropriate to incorporate in the administrative record.  Prelim. Inj. Hr'g Tr. 81:2-3.  In the absence of a statute requiring separate solicitations for IT services, QSS contends that GCE only offers "a sampling of solicitations across 18 years, no offer or other assertion from the Plaintiff that these are exhaustive or representative, nothing like that."[10]  Id. 81:16-19.  Instead, according to QSS, all that GCE presents with its proffered evidence is a self-serving "theory" that is buttressed by its own declarations, "not from esteemed professors of economics or anything else to describe to us that this does create a market or that there is some law or regulation that's violated by not separating them into separate solicitations."  Id. 81:20-82:5.  Accordingly, QSS maintains that supplementation of the administrative record is unnecessary to "shed light" on the legality of Modifications 30 and 32.  Def.-Intervenor's Opp'n & Reply 26.

### C.  Standards for Determining Whether Supplementation Is Appropriate

"As a general rule, in determining whether an agency's actions are arbitrary or irrational, the 'focal point for judicial review [of the agency's decision] should be the administrative record already in existence, not some new record made initially with the reviewing court.'"  Knowledge Connections, Inc. v. United States, 79 Fed. Cl. 750, 759 (2007) (quoting Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743 (1985) (alteration in original)).  The principle that a reviewing court "is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions," Fla. Power & Light Co., 470 U.S. at 744, "exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny," Esch, 876 F.2d at 991.

The administrative record "is not a documentary record maintained contemporaneously with the events or actions included in it.  Rather, it is a convenient vehicle for bringing the decision of an administrative body before a reviewing agency or a court."  Tech Sys., Inc. v. United States, 50 Fed. Cl. 216, 222 (2001).  "[I]t must be remembered that the 'administrative record is a fiction.'"  Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United

---

[10]  GCE responded to this contention during the hearing on its motion for a permanent injunction: "Counsel for both the government and QSS represented at the last hearing that there are counterexamples, but they still haven't provided a single one . . . .  We've kept looking, and we still found nothing other than the one Veteran's Administration solicitation that we identified at the very beginning."  Perm. Inj. Hr'g Tr. 18:25-19:8.

States, 56 Fed. Cl. 502, 508 (2003) (quoting CCL Serv. Corp. v. United States, 48 Fed. Cl. 113, 118 (2000)). Therefore, the court eschews "apply[ing] an iron-clad rule automatically limiting its review to the administrative record." GraphicData, LLC v. United States, 37 Fed. Cl. 771, 779 (1997); accord Al Ghanim, 56 Fed. Cl. at 508 n.7 (recognizing that "judges in the Court of Federal Claims take a more permissive stance toward supplementing the administrative record"); GraphicData, LLC, 37 Fed. Cl. at 780 ("[A] judge confronted with a bid protest case should not view the administrative record as [an] immutable boundary that defines the scope of the case."); Cubic Applications, Inc. v. United States, 37 Fed. Cl. 345, 350 (1997) (stating within the bid protest context that "this court has adopted a flexible approach . . . in putting together the evidence that will be considered . . . , balancing the limited nature of the court's review with the competing need to recognize potential exceptions to treating the agency's submission as the four corners of the inquiry.").

Nevertheless, supplementation of the administrative record is not automatic, and "the flexibility of the court's scope of review does not give the parties carte blanche to supplement the record . . . ." Al Ghanim, 56 Fed. Cl. at 508. This court has, on several occasions, analyzed the exceptions enumerated in Esch in order to determine whether supplementation is appropriate. See, e.g., Idea Int'l, Inc. v. United States, 74 Fed. Cl. 129, 138 (2006) (permitting supplementation with declarations that "meet the criteria established in Esch"); Murakami v. United States, 46 Fed. Cl. 731, 735-38 (2000) (containing an in-depth analysis of the Esch exceptions, but ultimately denying a request to supplement the administrative record), aff'd, 398 F.3d 1342 (Fed. Cir. 2005); Stapp Towing, Inc. v. United States, 34 Fed. Cl. 300, 308 (1995) (setting forth the Esch exceptions and stating that "[t]o the extent these exceptions are implicated in plaintiff's challenge . . . , the court will consider plaintiff's extra-record showings"); IMCO, Inc. v. United States, 33 Fed. Cl. 312, 317 (1995) ("To the extent [the Esch] exceptions are implicated, the court will consider the items offered."), aff'd, 97 F.3d 1422 (Fed. Cir. 1996). But see NEQ, LLC v. United States, 86 Fed. Cl. 592, 593 (2009) (explaining that the "theoretical bases for considering" materials that may improve the court's "'understanding' of a case," as articulated in Esch, are "questionable, at best" and noting that Esch "appear[s] to be in heavy tension with numerous Supreme Court precedents"); Serco, Inc. v. United States, 81 Fed. Cl. 463, 480 n.22 (2008) (criticizing Esch for its reliance upon "authorities (principally a law review article) that do not support its liberal view of supplementation"). Recently, the Federal Circuit addressed Esch and indicated that reliance upon the case was "problematic" for at least two reasons.[11] Axiom Res. Mgmt., Inc., 564 F.3d at 1380. "[I]nsofar as [it] departs from

_____

[11] First, the Federal Circuit noted that the exceptions were derived from a law review article that predated the United States Supreme Court's decision in Florida Power & Light Co., which determined that a reviewing court must apply the appropriate Administrative Procedure Act ("APA") standard to agency decisions based upon the record presented by the agency to the court. Axiom Res. Mgmt., Inc., 564 F.3d at 1380. Second, the Federal Circuit indicated that "Esch's vitality even within the D.C. Circuit is questionable in light of more recent opinions by that court which demonstrate a more restrictive approach to extra-record evidence." Id. (citing IMS, P.C. v. Alvarez, 129 F.3d 618 (D.C. Cir. 1997); Saratoga Dev. Corp. v. United States, 21

fundamental principles of administrative law as articulated by the Supreme Court," the Federal Circuit explained that <u>Esch</u> "is not the law of this circuit." <u>Id.</u> at 1381.

While the Federal Circuit clearly disfavored reliance upon the <u>Esch</u> factors in <u>Axiom Resource Management, Inc.</u>, it did so under circumstances in which the trial court in that case "add[ed] . . . documents to the record <u>without evaluating whether the record before the agency was sufficient to permit meaningful judicial review</u>." <u>Id.</u> at 1380 (emphasis added). The trial court, according to the Federal Circuit, "made clear that it would freely allow the parties to supplement the record 'with whatever they want,' and, by doing so, failed to make the required threshold determination of whether additional evidence was necessary." <u>Id.</u> As such, the Federal Circuit cautioned that supplementation should occur "<u>only if the existing record is insufficient to permit meaningful review</u> consistent with the APA." <u>Id.</u> at 1381 (emphasis added).

Supplementation, therefore, is justified when "required for meaningful judicial review," <u>Impresa Construzioni Geom. Domenico Garufi v. United States</u>, 238 F.3d 1324, 1338 (Fed. Cir. 2001); <u>accord</u> <u>Murakami</u>, 46 Fed. Cl. at 735 (noting that the <u>Esch</u> exceptions to the general rule against extra-record evidence "are <u>based upon necessity</u>, rather than convenience, and should be triggered only where the omission of extra-record evidence precludes effective judicial review" (emphasis added)), or when "the record is insufficient for the Court to render a decision," <u>Portfolio Disposition Mgmt. Group, LLC v. United States</u>, 64 Fed. Cl. 1, 12 (2005); <u>accord</u> <u>CCL Serv. Corp.</u>, 48 Fed. Cl. at 119 (stating that supplementation is appropriate where the record "still has lacunae that should be filled based on the protestor's challenges"). Supplementation is also justified "when it is necessary for a full and complete understanding of the issues." <u>Blue & Gold Fleet, LP v. United States</u>, 70 Fed. Cl. 487, 494 (2006); <u>accord</u> <u>Al Ghanim</u>, 56 Fed. Cl. at 508 (recognizing that supplementation is appropriate "when necessary to prove that evidence not in the record is evidence without which the court cannot fully understand the issues"); <u>Mike Hooks, Inc. v. United States</u>, 39 Fed. Cl. 147, 158 (1997) (considering evidence supplementing the record because it "help explain[s] the highly technical nature of the issues"). In this regard, the court applies a "flexible approach" to determine the corpus of evidence that will be considered in this case.[12] <u>Cubic Applications, Inc.</u>, 37 Fed. Cl. at 350. These principles remain viable, even after the Federal Circuit eschewed reliance upon the specific, broad exceptions enunciated by the <u>Esch</u> court under the circumstances presented in <u>Axiom Resource Management, Inc.</u>

---

F.3d 445 (D.C. Cir. 1994)).

[12] Notwithstanding the flexible approach it adopts in this case, the court recognizes that supplementation of the administrative record in bid protest actions "'must be extremely limited,' lest the admission of evidence not considered by the agency below and its consideration by the court convert the 'arbitrary and capricious' standard into effectively <u>de novo</u> review." <u>Murakami</u>, 46 Fed. Cl. at 735; <u>see also</u> <u>Axiom Res. Mgmt., Inc.</u>, 564 F.3d at 1379 ("While we recognize the need for an adequate record during judicial review, the parties' ability to supplement the administrative record is limited."). Limited, however, does not mean entirely foreclosed.

### D.  Supplementation of the Administrative Record Is Warranted

The court need not resolve the issue of whether the term 'system' includes audit-supporting federal financial management systems for the purpose of ruling upon GCE's motion to supplement.  Therefore, QSS's concerns that GCE's declarations "go into the merits," Prelim. Inj. Hr'g Tr. 78:12-13, are premature, as are the government's arguments that the court need only look to the language of the solicitation itself in order to determine the scope of the SETS II task order, see Def.'s Opp'n & Reply 17.  As noted above, GCE alleges in its complaint that a niche market exists for audit-supporting federal financial management services.  Compl. ¶ 15.  The existence and nature of this alleged market would not necessarily be reflected within or encompassed by the agency-produced administrative record.[13]  As a result, the court finds itself in a position in which it may not have a complete understanding of the issues before it and would be analyzing GCE's claims in a vacuum.  The court cannot make a reasoned decision without understanding the totality of the circumstances implicated in the case.  Furthermore, GCE's proffered materials that relate to the alleged existence of a niche market enable it to fully present its case, even if the court ultimately determines that the SETS II task order contemplated the systems and services in dispute.  See Stapp Towing, Inc., 34 Fed. Cl. at 308 (permitting supplementation based upon the Esch exceptions when they "are implicated in plaintiff's challenge").

"[T]he matter of supplementation must be carefully weighed," Ala. Aircraft Indus., Inc.-Birmingham v. United States, 82 Fed. Cl. 757, 763 (2008), and the court determines that the agency-produced administrative record does not permit meaningful judicial review given the circumstances presented in this case.  GCE's protest alleges that the Coast Guard's inaction–namely, its failure to issue a solicitation–violated the Competition in Contracting Act of 1984, Pub. L. No. 98-369, 98 Stat. 494 (codified as amended at 31 U.S.C. §§ 3551-3556 (2006)), and applicable regulations.  This court has previously permitted supplementation of the administrative record where "the government is being sued for inaction–failing to use the competitive process." CCL, Inc., 39 Fed. Cl. at 790.  The Coast Guard's decision not to resolicit a contract but, rather, to issue modifications to a task order under another contract necessarily means that there may, in fact, be no agency evaluation within an administrative record for the court to review.  Although GCE may ultimately fail in its bid protest, without an examination of the evidence supporting its claim, an arbitrary and capricious determination–or a determination

---

[13]  The court can extrapolate the potential existence of this market from portions of the administrative record, but supplemental materials offer the court a fuller understanding.

not in accordance with law–by a contracting officer would always go unchecked.[14]  Accordingly, the court concludes that supplementation is justified on this basis.

Additionally, the court determines that supplementation is warranted in this case given the multitude of issues presented with respect to both jurisdiction and the merits, especially in light of the "enormous amount of information" presented by the parties.  Perm. Inj. Hr'g Tr. 96:18; see also Esch, 876 F.2d at 991 (permitting supplementation "when a case is so complex that a court needs more evidence to enable it to understand the issues clearly").  The court finds that GCE's proffered materials aid in its determination and are, consequently, "necessary for a full and complete understanding of the issues."  Blue & Gold Fleet, LP, 70 Fed. Cl. at 494; cf. United Enter. & Assocs. v. United States, 70 Fed. Cl. 1, 18 (2007) (finding that supplementation was unnecessary because declarations "do not aid the court in its analysis").  Furthermore, regardless of the vitality of Esch, the court determines that supplementation advances "meaningful judicial review" in this case.  Impresa Construzioni Geom. Domenico Garufi, 238 F.3d at 1338; accord Savantage Fin. Servs., Inc. v. United States, 81 Fed. Cl. 300, 311 (2008) (permitting supplementation of the administrative record when "there are additional materials that will assist the court in conducting a . . . meaningful review").  On these bases, the court concludes that this case presents issues that render supplementation of the administrative record "necessary in order not 'to frustrate effective judicial review.'"  Axiom Res. Mgmt., Inc., 564 F.3d at 1381 (quoting Camp v. Pitts, 411 U.S. 138, 142-43 (1973)).  Accordingly, the court grants GCE's motion to supplement, denies in part the government's motion and opposition, and denies in part QSS's motion and opposition.

## II.  QSS'S MOTION TO STRIKE AND RENEWED MOTION TO STRIKE

Having determined that incorporation of GCE's evidence into the administrative record is appropriate, the court now addresses QSS's motion to strike and renewed motion to strike, the latter of which was initially made orally pursuant to Rule 7(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC").  In its motion to strike, QSS states, as noted previously, that it "has no objection, in principle, to the submission of declarations by Plaintiff's declarants . . . ."  Def.-Intervenor's Mot. Strike 2.  It does, however, raise specific objections "about particular portions" of the declarations GCE submitted in this case.[15]  Id.  In its renewed

---

[14]  Indeed, a court would be unable to determine "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion," Impresa Construzioni Geom. Domenico Garufi, 238 F.3d at 1333 (quotation marks omitted), where a protestor alleges that the procurement official's decision lacked a rational basis–or find "a clear and prejudicial violation of applicable statutes or regulations," id. (quotation marks omitted), where a protestor alleges that a procurement procedure involved a violation of regulation or procedure–in the absence of a solicitation and decision that are part of the administrative record.

[15]  GCE's declarations that are the subject of QSS's motion to strike are those of Raed Muslimani, GCE's President and CEO ("Muslimani Decl."); David Lucas, GCE's Chief Strategy

motion to strike, QSS objects to GCE's initial declarations, as well as to the following: (1)
GCE's first supplemental declarations of Messrs. Muslimani, Lucas, and Winslow, and its
second supplemental declarations of Messrs. Muslimani and Winslow; (2) GCE's inclusion of
non-Coast Guard request for proposal ("RFP") documents and purported summaries of RFPs
available on the Internet; (3) Internet web page material related to the ITOP II contract and a
SETS II task order summary; (4) Coast Guard task orders with GCE, Coast Guard RFPs, and
Coast Guard requests for quotations; and (5) news reports, press releases, and other materials
concerning the Department of Veterans Affairs ("VA") Office of Inspector General "Report on
Issues at VA Medical Center Bay Pines, Florida and Procurement and Deployment of the Core
Financial and Logistics System (CoreFLS)."  Def.-Intervenor's Renewed Mot. Strike 4.  The
court considers QSS's objections to these materials, which may be generally classified into three
areas, in the following order: (1) inadmissible lay opinion testimony; (2) hearsay; and (3)
cumulative and unnecessary evidence.

## A.  GCE's Declarations and Lay Opinion Testimony

QSS states that "[s]ince Plaintiff has not disclosed any of its declarants as expert
witnesses . . . or provided an expert report, . . . [it] must construe them as fact witnesses."  Id. at
2; see also RCFC 26(a)(2)(A)-(B) (requiring that a party disclose the identity of any person who
may present expert testimony as well as a written report).  Relying upon Rule 701 of the Federal
Rules of Evidence, QSS argues that GCE's declarations constitute opinion testimony by lay
witnesses.[16]  Def.-Intervenor's Mot. Strike 2.  According to QSS, lay opinion testimony "must be
rationally based on the perceptions of the witness, who must establish a factual basis for credible
opinion testimony," id. at 3 (citing United States v. Williams, 212 F.3d 1305, 1309-10 (D.C. Cir.
2000)), and the opinion must be "one that a reasonable person could draw from facts and
demonstrable experience, rather than from the person's own biases or predilections," id. (citing
United States v. Riddle, 103 F.3d 423, 428-29 (5th Cir. 1997)).

QSS states: "We don't have a problem when the declarations are reporting historical
facts.  We don't have problems when they are declarations that are reporting what the five senses
sensed.  But they go beyond that."  Perm. Inj. Hr'g Tr. 72:13-17.  However, QSS objects to the
initial Muslimani declaration because it allegedly contains lay opinion testimony concerning: (1)
types of Coast Guard computer applications in use in locations where GCE performs no work,
see Pl.'s App. 7 (Muslimani Decl. ¶ 25); (2) industry interpretation of the expiration of GCE's
sole-source bridge contract, see id. at 8 (Muslimani Decl. ¶ 31); (3) whether QSS might be

Officer ("Lucas Decl."); and David Winslow, GCE's Director of Financial Systems ("Winslow
Decl.").  See Def.-Intervenor's Mot. Strike 3-5.

[16]  The Federal Rules of Evidence apply to proceedings before the United States Court of
Federal Claims ("Court of Federal Claims").  See 28 U.S.C. § 2503(b) (2006).  Rule 701 governs
opinion testimony by lay witnesses, whereas Rule 702 governs expert testimony.  For a
discussion of Rule 701, see Part II.A.1, infra.

-14-

awarded particular work, see id. (Muslimani Decl. ¶ 33); (4) the Coast Guard's capabilities and
how any alleged shortcomings might be attributed to GCE, see id. at 9 (Muslimani Decl. ¶ 34);
and (5) statements that QSS believes could only be derived from personal knowledge if the
declarant were a Coast Guard contracting officer, see id. (Muslimani Decl. ¶ 36).  Def.-
Intervenor's Mot. Strike 3-4.  According to QSS, the initial Lucas declaration contains improper
lay opinion testimony concerning: (1) the existence, characteristics, conditions, and quality of
contract performance in an alleged specialized niche financial IT market, whether QSS is part of
this market, and the capabilities of other companies, see Pl.'s App. 14-22, 28 (Lucas Decl. ¶¶ 5-
8, 11-30, 32, 55); (2) the behavior of federal agencies in their financial IT procurements, see id.
at 15 (Lucas Decl. ¶ 10); (3) how offerors break down into "pools" and the nature of work on
which other companies bid, see id. at 21-22 (Lucas Decl. ¶ 31); (4) standard industry practice and
the general practice of the government in contract management, see id. at 23, 27 (Lucas Decl.
¶¶ 36, 53); and (5) reputational harm to GCE,[17] see id. at 30 (Lucas Decl. ¶ 65).  Def.-
Intervenor's Mot. 4-5.  Finally, QSS challenges those portions of the initial Winslow declaration
that offer opinions about: (1) the applicability of federal statutes to the operation of IT systems
and how those systems interact with those laws, see Pl.'s App. 40-41 (Winslow Decl. ¶¶ 33-37);
(2) industry recognition of expertise in particular IT programs and capabilities of contractors
other than GCE, see id. at 41-42 (Winslow Decl. ¶¶ 37, 39-41); and (3) the goals of federal
agencies and federal procurement practices, see id. at 42 (Winslow Decl. ¶¶ 43, 45).[18]  Def.-
Intervenor's Mot. Strike 5.  Taken together, QSS asserts that these opinions "[l]ack[] factual
foundation, and [are] not rationally based on the perception of the witness . . . ."[19]  Id. at 6.

GCE responds by arguing that Rule 701 applies only to "opinion" testimony and permits
lay opinion testimony "when it is helpful to understand a fact in issue, as long as the opinion is
based on the witness' perceptions rather than technical expertise."  Pl.'s Opp'n 2.  According to

---

[17] Additionally, QSS objects to paragraphs 57 through 61 of the initial Lucas declaration,
see Pl.'s App. 28-29, which it maintains are "entirely comprised of improper opinion testimony,
Def.-Intervenor's Mot. Strike 5.

[18] QSS characterizes additional portions of the initial Winslow declaration as "an expert
report masquerading as a factual declaration."  Def.-Intervenor's Mot. Strike 5 (citing Pl.'s App.
43-45 (Winslow Decl. ¶¶ 48-55)).

[19] In its renewed motion to strike, QSS argues that the supplemental declarations of
Messrs. Muslimani ("Muslimani Supp'l Decl."), Lucas ("Lucas Supp'l Decl."), and Winslow
("Winslow Supp'l Decl.")–as well as the second supplemental declarations of Messrs. Muslimani
("Muslimani 2d Supp'l Decl.") and Winslow–are "unnecessary and cumulative."  Def.-
Intervenor's Renewed Mot. Strike 4.  Additionally, QSS asserts that the second supplemental
declarations of Messrs. Muslimani and Winslow contain hearsay.  Id. at 4 n.8; accord Perm. Inj.
Hr'g Tr. 73:15-20 (arguing that GCE's declarations contain hearsay, which "this Court has
properly struck from the record in bid protests before").  These arguments are addressed in Parts
II.B.1.a-b, infra.

GCE, "many of the statements" contained in these declarations are not opinion testimony and, consequently, "Rule 701 is . . . not even applicable . . . ." Id. at 3.  Moreover, GCE states that "[t]o the extent that portions of the declarations are deemed to contain some lay opinion testimony, they are still admissible." Id.

GCE emphasizes that its declaration evidence contains information "from individuals with decades of experience confirming that only a distinct and specialized group of contractors would bid on–and had the expertise to perform–contracts for IT work related to audit-supporting financial management systems." Pl.'s Mem. 7.  As such, GCE maintains that its declarants' testimony "is grounded in their firsthand perceptions of their numerous interactions with agencies and other contractors through the years." Pl.'s Opp'n 5.  To that end, GCE responds to each objection raised by QSS, noting in each instance that the challenged testimony is either proper lay opinion testimony–based upon personal knowledge or personal observations–or purely factual based upon personal observations.  See id. at 7-15.  Thus, GCE maintains that its declarations

> consist[] predominantly of specific factual statements relating to those individuals' personal knowledge of their industry and the work their company has done for the Coast Guard.  Therefore, most of the content of the declarations does not qualify as "opinion" testimony subject to Rule 701.  However, some of the testimony is presented at a more general level, allowing the declarants to discuss their impressions based on cumulative experience.  While such statements may be considered lay opinion, they are entirely proper under Rule 701 because they are based on the declarants' own personal knowledge of . . . financial IT systems and procurements in their niche industry.

Id. at 15-16.

## 1. Opinion Testimony and Rule 701

Rule 701 governs opinion testimony by lay witnesses:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.[20]

---

[20] Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an

Fed. R. Evid. 701 (footnote added).  In 2000, Rule 701 was amended to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing."  Fed. R. Evid. 701 advisory committee's note. Although "the difficulty in administering the 2000 amendment [is] drawing the line between lay and expert testimony," 1 McCormick on Evidence § 11 (Kenneth S. Broun, et al. eds., 2006), the advisory committee nonetheless distinguished between the two as follows: lay testimony "'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field,'"[21] Fed. R. Evid. 701 advisory committee's note (quoting State v. Brown, 836 S.W.2d 530, 549 (Tenn. 1992)).

"Implicit in [Rule 701] is a distinction between fact and opinion, and the premise is that generally lay witnesses should testify to facts."  3 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 7:1 (3d ed. 2007).  There is, however, "no satisfactory dividing line between these two categories."  Id.  Witnesses should state facts, i.e., "they should provide particulars or details, so the trier of fact may put them together . . . ."  Id.; see also 1 McCormick on Evidence, supra, § 10 ("[T]he law prefers that a witness testify to facts, based on personal knowledge, rather than opinions inferred from such facts."); 4 Weinstein & Berger, supra, § 701.03[1] ("To be admissible, lay opinion testimony must be based on the witness's personal perception."). Where Rule 701 allows opinions or inferences, "what is meant is that the witness may be more general, conclusory, and evaluative."  3 Mueller & Kirkpatrick, supra, § 7:1; accord 4 Weinstein & Berger, supra, § 701.03[1] ("Lay opinion testimony is . . . admissible when the inference is a conclusion drawn from a series of personal observations over time.").  As the United States Court of Appeals for the Eight Circuit ("Eighth Circuit") explained in United States v. Espino,

---

expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

[21]  The amendments to Rule 701 were

intended to induce the courts to focus on the reasoning process by which witnesses reached their opinions; the courts are to determine whether the proffered testimony should be analyzed under Rule 701 or Rule 702 by ascertaining whether the witness used a reasoning process normal to the activities of everyday life.

4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 701.03[1] (2d ed. 2008).

> Rule 701 permits lay opinion testimony if it is based on "relevant historical or
> narrative facts that the witness has perceived," and if it "would help the factfinder
> determine a matter in issue[.]"   "While the ordinary rule confines the testimony of
> a lay witness to concrete facts within his knowledge or observation, the [c]ourt
> may rightly exercise a certain amount of latitude in permitting a witness to state
> his conclusions based upon common knowledge or experience."

317 F.3d 788, 797 (8th Cir. 2003) (citations omitted); see also 1 McCormick on Evidence, supra,
§ 11 ("[B]y its terms Rule 701 authorizes the receipt of any lay opinion 'helpful' to the trier of
fact."). Thus, "the situations that invite opinions or inferences . . . are themselves stated
generally, with a looseness about them that calls for the exercise of discretion by the trial judge."
3 Mueller & Kirkpatrick, supra, § 7:1; accord United States v. Kaplan, 490 F.3d 110, 117 (2d
Cir. 2007) (reviewing a district court's decision to admit lay opinion testimony for abuse of
discretion); Union Pac. Res. Co. v. Chesapeake Energy Corp., 236 F.3d 684, 692-94 (Fed. Cir.
2001) (applying the law of the United States Court of Appeals for the Fifth Circuit with respect
to nonpatent issues to review evidentiary rulings under an abuse of discretion standard and
finding that the district court did not abuse its discretion by admitting opinion testimony under
Rule 701); Burlington N. R.R. Co. v. Nebraska, 802 F.2d 994, 1005 (8th Cir. 1986) ("The district
court has broad discretion in determining whether to admit opinion testimony and we overturn a
ruling only for abuse of discretion.").

    "The general application of Rule 701 indicates that a lay witness may testify about facts
within his or her range of generalized knowledge, experience, and perception." Espino, 317 F.3d
at 797. The opinion "must have a rational connection to those facts." Miss. Chem. Corp. v.
Dresser-Rand Co., 287 F.3d 359, 373 (5th Cir. 2002); accord Union Pac. Res. Co., 236 F.3d at
693 (sustaining the district court's decision to admit testimony from eight witnesses with
"extensive personal experience" in the oil drilling industry); Burlington N. R.R. Co., 802 F.2d at
1005 ("A lay witness' testimony in the form of opinions or inferences need only be rationally
based on perception . . . ."). Where the testimony is based upon personal knowledge of the facts
underlying the opinion and the opinion is rationally related to the facts, a lay witness may, "under
certain circumstances[,] express an opinion even on matters appropriate for expert testimony."
Soden v. Freightliner Corp., 714 F.2d 498, 511 (5th Cir. 1983) (citing cases from the Eighth
Circuit and the United States Courts of Appeals for the Tenth Circuit).

    As the Federal Circuit recognized in Union Pacific Resources Co., lay opinion testimony
based upon extensive experience in an industry is admissible under Rule 701. See 236 F.3d at
693; accord Farner v. Paccar, Inc., 562 F.2d 518, 528-29 (8th Cir. 1977) ("We agree with the trial
court that [the witness], who had been in the trucking business almost thirty years[,] . . . could
testify as to the simple use of the safety chains . . . as a lay witness speaking within his own
knowledge and perception . . . ."); L.A. Times Commc'ns, LLC v. Dep't of the Army, 442 F.
Supp. 2d 880, 887 (C.D. Cal. 2006) ("Generally, lay witnesses can testify to inferences or
opinions that are drawn from a series of personal observations over time . . . [and can] testify to
opinions based on a combination of their personal observations . . . and their specialized

knowledge obtained through their vocation." (citation omitted)).  Thus, some courts "admit opinion testimony from lay witnesses based not only on their own observations and personal perceptions respecting the incident in question, . . . but also on the witness's experience and specialized knowledge obtained in his or her vocation or avocation."  4 Weinstein & Berger, supra, § 701.03[1].  Even testimony that is "somewhat speculative" may nonetheless be admitted under Rule 701.  Staley v. Bridgestone/Firestone, Inc., 106 F.3d 1504, 1513 (10th Cir. 1997) (determining that the district court did not abuse its discretion by permitting such testimony under Rule 701).

## 2.  GCE's Initial Declarations Are Admissible

The court disagrees with QSS's contention that GCE's initial declarations contain improper lay opinion.  First, many of the statements are not opinion.  See, e.g., Pl.'s App. 7 (Muslimani Decl. ¶ 25 (describing computer systems hosted at the Coast Guard's OSC that did not include audit-supporting federal financial management systems based upon the declarant's personal knowledge of those systems)), 15 (Lucas Decl. ¶ 10 (stating that federal agencies "have consistently bid out their IT work for audited financial management systems separately from their mission-focused or other IT work," which is based upon the declarant's personal involvement "with procurement competitions for federal systems work with GCE since 2001")), 41-42 (Winslow Decl. ¶¶ 39-41 (describing qualifications of the GCE team, referencing job solicitations seeking developers and analysts who possess specific training, and describing types of software changes and the specific expertise associated with performing such changes, all of which are based upon the declarant's experience supervising GCE employees and working within the industry)).  Indeed, these statements are factual in nature.  As such, the court is satisfied that these and other statements contained within GCE's proffered declarations are based entirely upon the declarants' personal observations and knowledge derived from experience within their fields.

Second, to the extent that GCE's declarants offer lay opinion testimony that is subject to Rule 701, the court finds that such testimony falls within the rule's parameters and is admissible.  As noted above, lay opinion testimony "must have a rational connection," Miss. Chem. Corp., 287 F.3d at 373, to "facts within [the witness's] range of generalized knowledge, experience, and perception," Espino, 317 F.3d at 797, and such testimony may not be based upon scientific, technical, or other specialized knowledge, see Fed. R. Evid. 701.  All of the proffered opinions of Messrs. Muslimani, Lucas, and Winslow are based upon circumstances they have observed or encountered within the industry and reflect a general knowledge of their work.  See, e.g., Pl.'s App. 8 (Muslimani Decl. ¶ 31 (opining that a transfer of financial systems work from GCE might suggest that its work was "below standard" based upon the declarant's knowledge of and participation within a small financial management systems contracting community)),[22] 23 (Lucas

---

[22]  This information is reinforced in Mr. Muslimani's subsequent declarations.  See Pl.'s App. 923 (Muslimani Supp'l Decl. ¶¶ 5-6 (discussing the declarant's participation in industry conferences and conversations with potential teaming partners, and offering an opinion about the effects upon a company's reputation within this community if it is perceived to have performed

Decl. ¶ 36 (opining that it "would be standard industry practice" for potential teaming partners to conduct discussions regarding teaming arrangements if the Coast Guard's financial management systems were part of the SETS II competition based upon the declarant's previous experience of engaging in discussions with other contractors)),[23] 42 (Winslow Decl. ¶ 45 (opining that federal financial management system IT support contracts "regularly include[]" provisions containing prerequisite requirements, such as subject-matter and technical expertise, based upon the declarant's sixteen years of IT experience, including seven years as project manager for GCE's contracts)).

Indeed, these proffered opinions do not require any particular expertise or specialization in government contracting. Cf. Perm. Inj. Hr'g Tr. 72:20-23 (containing QSS's argument that GCE declarants are "giving their expert opinion that there is such a niche market; or whether or not SETS II included or could include financial management systems"). To the contrary, these statements are "general, conclusory, and evaluative," 3 Mueller & Kirkpatrick, supra, § 7:1, and are based entirely upon personal experience and observations obtained through the declarants' line of work. For example, Mr. Winslow's ability to offer lay opinion testimony about the requirements contained in these contracts stems from his eight years of financial management systems IT experience tracking and reviewing approximately two solicitations per month, regular attendance at numerous financial management conferences, and previous work on approximately nineteen competitions for various federal agencies.[24] Pl.'s App. 938-39 (Winslow Supp'l Decl. ¶¶ 2, 4, 6). Similarly, Mr. Muslimani's lay opinion testimony that GCE would be perceived as performing poorly is based upon his "numerous conversations with potential teaming partners regarding the inclusion or exclusion of certain companies based on their performance history."[25]

---

poorly)), 1008 (Muslimani 2d Supp'l Decl. ¶¶ 5-6 (same). The court considers Mr. Muslimani's second supplemental declaration only with regard to potential harms, see supra note 4, though statements contained therein reference Mr. Muslimani's experience within the profession. Furthermore, because the court finds that the administrative record does not aid the court in determining the full scope of potential harms to the parties, the court admits the harm declaration of Mr. Bowen proffered by QSS. See Def.-Intervenor's Mot. Strike Ex.

[23] Again, this information is reinforced in Mr. Lucas's supplemental declaration. See Pl.'s App. 930 (Lucas Supp'l Decl. ¶ 7 (opining that the same pool of companies that regularly competes for financial management systems contracts based upon the declarant's familiarity with "the market of companies who regularly attend these federal financial management systems conferences")).

[24] Mr. Winslow, who has been a GCE employee since 2000, states that he has more than sixteen years of IT experience. Pl.'s App. 937 (Winslow Supp'l Decl. ¶ 2).

[25] Mr. Muslimani states that he has worked in the IT support field for audit-supporting federal financial management systems for almost twenty years and that he has approximately thirteen years of experience with the Coast Guard's financial management systems. Pl.'s App.

Id. at 923 (Muslimani 2d Supp'l Decl. ¶ 6).  These statements, like many others contained in the various proffered declarations, are grounded in the declarants' direct "personal observations over time."  L.A. Times Commc'ns, LLC, 442 F. Supp. 2d at 887; accord 4 Weinstein & Berger, supra, § 701.03[1] ("Most courts have . . . permitted lay witnesses to testify under Rule 701 to their opinions when those opinions are based on a combination of their personal observations . . . and the background information they acquired through earlier personal observations.").  Even if the court found that these opinions were speculative, such a conclusion would not warrant their exclusion.  See Staley, 106 F.3d at 1513.

## B.  QSS's Additional Objections

As noted above, QSS maintains that GCE's supplemental declarations and additional extra-record evidence constitute inadmissible hearsay.  Def.-Intervenor's Opp'n & Reply 26-28.  Furthermore, QSS argues that these materials are "unnecessary and cumulative," Def.-Intervenor's Renewed Mot. 4, and therefore do not meet the standards of admissibility under Federal Rule of Evidence 403, id. at 7-12.  The court addresses QSS's hearsay objections first.

## 1.  Hearsay

Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[26]  Fed. R. Evid. 801(c).  Rule 802 states that hearsay is "not admissible" unless an exception applies.  Fed. R. Evid. 802.  The Federal Rules of Evidence exclude hearsay "because it is considered generally less reliable than live testimony."  3 Mueller & Kirkpatrick, supra, § 8:3.  Nevertheless, hearsay "is not by its inherent nature unworthy of any reliance in a judicial proceeding.  The contrary is proved by the fact that courts are constantly admitting hearsay evidence under the numerous exceptions to the hearsay rule."  2 McCormick on Evidence, supra, § 245.

According to QSS, GCE's declarations "are hearsay to which no exception . . . applies, including the residual exception to the hearsay rule."  Def.-Intervenor's Opp'n & Reply 27.  Specifically, QSS contends that these declarations contain "statements prepared exclusively for this litigation and [are] not competent evidence for the Court to consider to resolve the merits of this litigation."  Id. at 28; see also Def.'s Mot. Dismiss, or, Alternative, Mot. J. Administrative R., & Def.'s Opp'n Pl.'s Mot. Prelim. Inj. & Application TRO ("Def.'s Mot. & Opp'n") 26 n.13 (raising hearsay objections to statements made in GCE's declarations).  Interestingly, QSS does not identify any specific statement that it believes constitutes inadmissible hearsay.  Cf. Def.'s

922 (Muslimani 2d Supp'l Decl. ¶ 3).  According to Mr. Muslimani, he has "followed the solicitations and procurements of the Coast Guard closely throughout this time[] because the Coast Guard has been a key part of [his] company's business."  Id.

[26]  The statement may be either (1) an oral or written assertion, or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.  Fed. R. Evid. 801(a).

Mot. & Opp'n 26 n.13 (identifying one such statement).[27]  In response, GCE argues that "this Court . . . has not hesitated to supplement the administrative record with declarations while deciding whether to grant a permanent injunction in a bid protest action."  Pl.'s Mem. 21 & n.17 (citing cases).

### a. GCE's Supplemental Declarations Are Admissible

As QSS notes, none of the "four cases [upon which GCE relies] discuss[es] hearsay.  So they do not go to the issue that GCE appears to [propose] that they stand for, which is that you can let hearsay in."  Perm. Inj. Hr'g Tr. 74:2-6.  Indeed, the cases GCE cites do not specifically address hearsay and whether any materials supplementing the administrative record contained inadmissible statements.  Although it apparently did not exclude materials on the basis of hearsay, the court in CCL, Inc. refused to admit materials it found were irrelevant; it only admitted proffered affidavits "to the extent that they [we]re relevant."  39 Fed. Cl. at 791.  Here, the court adopts a similar approach and is not persuaded that one cited example of alleged hearsay justifies wholesale exclusion of GCE's declarations.[28]  The court admits GCE's supplemental declarations because it finds that they, like the initial declarations, aid in its review of this case.  See supra Part II.A.2.  Furthermore, as QSS acknowledges, the court permitted the parties to submit supplemental declarations during the final round of briefing solely for the purpose of explaining potential harm.  See Order, Apr. 7, 2008; Def.-Intervenor's Renewed Mot. Strike 4 n.8; supra note 4.  To the extent that GCE's declarations contain hearsay statements, such statements will not be considered.  Indeed, the one specific reference that defendant suggests is hearsay is, ultimately, irrelevant and would be deemed as such.  See supra note 27.

### b. GCE's Non-Coast Guard RFP Summaries and Internet Web Page Material Are Admissible

QSS also argues that commercially obtained materials purporting to be excerpts from federal financial IT procurements are inadmissible hearsay to which no exception applies.[29]  Def.-

---

[27]  The government references a statement in Mr. Winslow's initial declaration in which he states that Ms. Linda Dearing, an employee within the Headquarters Procurement Office at the OSC, informed him and other GCE employees that the OSC was "[. . .] . . . ."  Pl.'s App. 38 (Winslow Decl. ¶ 25).

[28]  GCE notes that "QSS does not identify with particularity any portions of the challenged declarations as hearsay, instead apparently arguing that they are hearsay in their entirety because they are not live testimony."  Pl.'s Mem. 21.

[29]  QSS is "not claiming that there's hearsay in those government RFPs. . . .  What we're focusing on . . . are the procurement summaries."  Perm. Inj. Hr'g Tr. 77:19-22.  According to GCE, "agency solicitations are plainly admissible because they are publicly available documents of which the Court may take judicial notice" pursuant to Federal Rule of Evidence 201(b).

Intervenor's Opp'n & Reply 28.  During oral argument, QSS's counsel stated:

> Evidently, [GCE] went out to this input.com website, and there are these procurement summaries, which are summaries of the solicitation.  So necessarily, if there's a summary, there is a summarizer.  I don't know that there's any reliability that the summarizer, when she or he was putting those together, would have even known or was wearing the rose colored glasses that GCE wears . . . .  Instead, those summaries talk in terms of services.  Again, for performance work stated for SETS II in the Mod[ification] 30, services are the same.  So we see through the summaries what the summarizer thought.  But we don't know what training the summarizer had or if they even knew that they should try and split the world into those two halves.

Perm. Inj. Hr'g Tr. 77:23-78:16; accord Def.-Intervenor's Opp'n & Reply 28 (stating that these documents "are merely excerpts that do not show the entire scope of work of the purported procurements, which thereby renders their reliability suspect").  GCE, however, asserts that QSS's "quibbles with the supposed lack of authentication of the solicitation and Input.com documents" are unnecessary because these materials are (1) public documents of which the court can take judicial notice, and (2) authenticated by Mr. Lucas in his initial declaration.[30]  Pl.'s Mem. 21 n.14; accord id. at 21 (arguing that to the extent that the Internet materials constitute hearsay, "they fall comfortably within an exception to the hearsay rule, which allows for the admission of 'commercial publications' notwithstanding their hearsay status" (quoting Fed. R. Evid. 803(17))).

Market reports and commercial publications are excepted from the hearsay rule.  See Fed. R. Evid. 803(17) (excluding from the hearsay rule "[m]arket quotations, tabulations, lists, directors, or other published compilations, generally used and relied upon by the public or by persons in particular occupations").  Mr. Lucas describes Input.com, a "market research/intelligence service" to which GCE subscribes, as a service that provides GCE with

---

[30]  Courts may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); see also Lussier v. Runyon, 50 F.3d 1103, 1114 (1st Cir. 1995) ("As Rule 201(b) teaches, judges may not defenestrate established evidentiary processes, thereby rendering inoperative the standard mechanisms of proof and scrutiny, if the evidence in question is at all vulnerable to reasonable dispute.").  Such facts include material available on the Internet.  See, e.g., O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web."); Coleman v. Dretke, 409 F.3d 665, 667 (5th Cir. 2005) ("[W]e fail to see any merit to an objection to the panel taking judicial notice of the state agency's own website.").  As the Court of Federal Claims recently noted, "[f]or a fact to be judicially noticed under Rule 201(b), 'indisputability is a prerequisite.'"  Ala. Aircraft Indus., Inc.-Birmingham, 82 Fed. Cl. at 765 (quoting Hennessy v. Penril Datacomm Networks, Inc., 69 F.3d 1344, 1354 (7th Cir. 1995)).

"pre-solicitation information and teaming opportunities." Pl.'s App. 929 (Lucas Supp'l Decl. ¶ 5). It is therefore apparent that GCE relies upon the information supplied by this service.[31] Additionally, Input.com represents that one of its missions is to serve as "the leading global provider of information to [help] industry and government conduct business, thus [creating] value for our members . . . ." Mission & Vision, http://www.input.com/corp/about/mission.cfm (last visited May 19, 2009). As such, the materials that GCE obtained from Input.com were "prepared with the view that they would be in general use by an industry or members of the public having a general need to rely on information of that type." Conoco Inc. v. Dep't of Energy, 99 F.3d 387, 393 (Fed. Cir. 1996). In Conoco Inc., the Federal Circuit noted that "publishers of the types of commercial documents that are typically admissible under Rule 803(17) . . . stake their business or public reputations on the accuracy of the summaries." Id. The court finds that the materials GCE provided from the Input.com website are reliable and of the nature contemplated by Rule 803(17). Accordingly, the court admits these materials on this basis. Because agency solicitations are publicly available documents, QSS does not raise hearsay objections to them, see Perm. Inj. Hr'g Tr. 77:19-22, and their contents are not disputed by the parties, the court takes judicial notice of these remaining documents and finds no reason to exclude them. Cf. Hennessy, 69 F.3d at 1354 (upholding the district court's refusal to take judicial notice of materials that were the subject of "considerable argument" by the parties because their contents were in dispute).

## 2. Cumulative and Unnecessary Evidence

QSS objects to the remainder of GCE's proffered extra-record evidence as not satisfying the standards of admissibility under Federal Rule of Evidence 403. Def.-Intervenor's Renewed Mot. Strike 7-10. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403 "governs the admittance of evidence at trial,"[32] Evergreen Trading, LLC ex rel. Nussdorf, 80 Fed. Cl. 122, 135 (2007), and is "evidence law's answer to the adage, 'Enough is enough,'" 1 Mueller & Kirkpatrick, supra, § 4:11. Its "'major function' . . . 'is limited to excluding matter of scant or cumulative probative force' . . . ." United States v. Cross, 928 F.2d 1030, 1048 (11th Cir. 1991) (quoting United States v. Norton, 867 F.2d 1354, 1361 (11th Cir. 1989)). The United States Court of Appeals for the Eleventh Circuit has stated that in "reviewing issues under Rule 403, we look at the evidence in a light most favorable

---

[31] In fact, Input.com's website represents that over 1,300 companies rely upon the information it furnishes in order "to achieve results in the government market." About INPUT, http://www.input.com/corp/about/company.cfm (last visited May 19, 2009).

[32] Here, the parties seek judgment on the administrative record pursuant to RCFC 52.1, which "is 'designed to provide for a trial on a paper record, allowing fact-finding by the trial court.'" Sealift, Inc. v. United States, 82 Fed. Cl. 527, 536 (2008) (quoting Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005)).

to its admission, maximizing its probative value and minimizing its undue prejudicial impact." United States v. Brown, 441 F.3d 1330, 1362 (11th Cir. 2006). Ultimately, whether evidence should be excluded under Rule 403 is a "matter for the sound exercise of discretion by the trial judge." 1 Mueller & Kirkpatrick, supra, § 4:11.

QSS asserts that GCE's "original premise" in seeking to supplement the administrative record "was that the Court would need to consult evidence outside the Record to understand whether potential bidders for the SETS II task order would have expected the financial management systems IT work encompassed in Modifications 30 and 32 . . . to fall within the scope of the task order." Def.-Intervenor's Renewed Mot. Strike 9. It notes that GCE then "urged the Court to consider the evidence in the Record . . . to find a fully adequate basis for the Plaintiff's desired conclusion." Id. at 9-10 (citing Pl.'s Mem. 21-22). Based upon GCE's position, QSS states that "Plaintiff's argument necessarily means that the Court must reject Plaintiff's extra-Record evidence as cumulative." Id. at 10.

GCE argues, as noted above, that it has not conceded that supplementation is ultimately unnecessary because sufficient evidence may already exist within the administrative record for the court to rule in its favor. See Pl.'s Opp'n Mem. 2-4. It asserts that its proffered evidence is admissible under Rule 403 "because it is highly probative and provides important clarification and corroboration of materials in the agency-assembled record." Id. at 6. This material, GCE states, "complement[s] each other, but [is] not redundant of each other or anything else in the record." Id. Instead, GCE argues that its evidence has "independent force," id. at 7, or "substantial and independent probative value," id. at 9.

The court declines to strike GCE's supplemental materials on the grounds that they are cumulative or duplicative. As GCE notes, QSS "does not argue that GCE's evidence is unfairly prejudicial, that the supplemental evidence confuses the issues, or that it is likely to mislead the trier of fact." Id. at 4. In fact, QSS adopts the position that GCE's proffered evidence "adds nothing to the debate." Def.-Intervenor's Renewed Mot. Strike 12. The relevant question is whether GCE's proffered evidence aids the court in "conducting a 'thorough, probing, in-depth' review of the agency action . . . ." Savantage Fin. Servs., Inc., 81 Fed. Cl. at 311 (quoting Myers Investigative & Sec. Servs., Inc. v. United States, 47 Fed. Cl. 288, 293 (2000)). The court determines that it does. Although the agency-filed administrative record may, in fact, contain references to the information GCE seeks to incorporate, GCE's proffered evidence does not create unnecessary duplication. Furthermore, the court rejects QSS's and the government's arguments based upon relevance. The court deems GCE's proffered extra-record evidence to possess probative value and therefore finds no basis for QSS's contention that this evidence is cumulative or duplicative.

### III. CONCLUSION

The court has carefully reviewed the agency-filed administrative record in this case and GCE's proffered materials. It has determined, for the reasons explained in Part I.D, supra, that

supplementation furthers meaningful judicial review of the issues presented before the court.  As such, supplementation is appropriate and, in fact, necessary in this case.

This decision, however, does not bear upon the separate, merits-based question of whether the SETS II task order contemplated the addition of audit-supporting federal financial management systems and related services.  The sole question presented to and resolved by the court at this juncture is whether, as QSS aptly stated, GCE can "get through the gates in order to get their extrinsic information even considered by the Court."  Perm. Inj. Hr'g Tr. 79:3-4.  GCE has made the necessary showings.  Accordingly, it is hereby **ORDERED**:

1.    GCE's motion to supplement is **GRANTED**.

2.    QSS's motion to strike is **GRANTED IN PART** and **DENIED IN PART**.

3.    QSS's renewed motion to strike is **DENIED**.

4.    The government's motion and opposition is **DENIED IN PART**.

5.    QSS's motion and opposition is **DENIED IN PART**.

The court has filed this decision under seal.  The parties shall confer to determine proposed redactions that are agreeable to all parties.  Then, **by no later than Friday, June 26, 2009**, the parties shall file a joint status report indicating their agreement with the proposed redactions and **attaching a complete copy of the court's decision with all redactions clearly indicated**.

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge