# In the United States Court of Federal Claims

No. 08-133 C
(Filed Under Seal: July 22, 2009)
(Reissued: July 28, 2009)*

*******************************************
GLOBAL COMPUTER ENTERPRISES, INC.,       *
                                          *
            Plaintiff,                    *   RCFC 59(e); Motion to Amend
                                          *   Judgment; Clarification of Decision;
v.                                        *   Use of Phrase "Fair and Open
                                          *   Competition"; Agency Discretion
THE UNITED STATES,                        *
                                          *
            Defendant,                    *
                                          *
and                                       *
                                          *
QSS GROUP, INC.,                          *
                                          *
            Defendant-Intervenor.         *
*******************************************

Jonathan J. Frankel, Washington, DC, for plaintiff.  John P. Janecek, Ariel B. Waldman, Timothy R. Schnabel, and Sara K. Kasper, of counsel.

William P. Rayel, United States Department of Justice, Washington, DC, for defendant.

J. Scott Hommer, III, Vienna, VA, for Defendant-Intervenor.  William L. Walsh, Jr., Keir X. Bancroft, Patrick R. Quigley, and Peter A. Riesen, of counsel.

**RULING ON DEFENDANT'S MOTION TO AMEND THE JUDGMENT**

**SWEENEY**, Judge

    Before the court is the government's motion to amend the judgment ("motion"), filed pursuant to Rule 59(e) of the Rules of the United States Court of Federal Claims ("RCFC").  In its motion, the government requests that the court amend its May 29, 2009 merits decision by replacing the sentence "[t]he [United States] Coast Guard [("Coast Guard")] must recompete

---

    * The court issued this decision under seal on July 22, 2009, and directed the parties to submit proposed redactions by July 30, 2009.  In their July 28, 2009 joint status report, the parties indicate that no redaction are necessary.

these services through a fair and open competition," Def.'s Mot. Amend J. ("Def.'s Mot.") 1 (quoting Global Computer Enters., Inc. v. United States, No. 08-133, slip op. at 151 (Fed. Cl. May 29, 2009)) (first alteration in original), with the sentence "[a]ny future procurement of these services must be consistent with the Court's May [29], 2009 opinion and order," id. (second alteration added). Although defendant-intervenor QSS Group, Inc. ("QSS") does not oppose the government's motion, see id., plaintiff Global Computer Enterprises, Inc. ("GCE") objects, asserting, among other things, that the government's concerns are insufficient under RCFC 59(e) to support amendment of the judgment. For the reasons discussed below, the government's motion is granted in part and denied in part.

## I.  STANDARD OF REVIEW

A motion to alter or amend judgment under RCFC 59(e) "seeks a revision which disturbs or revises legal rights and obligations that were settled by the previous judgment." Maxus Energy Corp. & Subsidiaries v. United States, 31 F.3d 1135, 1139 (Fed. Cir. 1994); see also White v. N.H. Dep't of Employment Sec., 455 U.S. 445, 450 (1982) (noting that Rule 59(e) of the Federal Rules of Civil Procedure "had a clear and narrow aim" and was adopted "to 'mak[e] clear that the district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment" (alteration in original)). The United States Court of Federal Claims ("Court of Federal Claims") has previously applied the decisional law guiding an RCFC 59(a) motion for reconsideration to an RCFC 59(e) motion to amend. See Stockton E. Water Dist. v. United States, 76 Fed. Cl. 470, 472 (2007) (discussing whether the plaintiff asserted one of three grounds that warrant reconsideration under RCFC 59: (1) an intervening change in controlling law; (2) the availability of evidence not previously available; or (3) the need to prevent manifest injustice). The United States Court of Appeals for the Federal Circuit ("Federal Circuit") has also utilized the standards set forth in Rule 59(a) to review Rule 59(e) motions. Compare Parsons ex rel. Linmar Prop. Mgmt. Trust v. United States, 174 Fed. App'x 561, 563 (Fed. Cir. 2006) (discussing the three grounds that warrant reconsideration under RCFC 59: (1) an intervening change in controlling law; (2) the availability of evidence not previously available; or (3) the need to prevent manifest injustice), with Ajinomoto Co. v. Archer-Daniels-Midland Co., 228 F.3d 1338, 1350 (Fed. Cir. 2000) (addressing a Rule 59(e) of the Federal Rules of Civil Procedure motion to amend judgment in a patent case and applying the law of the United States Court of Appeals for the Third Circuit, which instructed that a motion to amend judgment must rely on (1) an intervening change in controlling law, (2) the availability of evidence not previously available, or (3) the need to prevent manifest injustice). The Federal Circuit has described the standard under RCFC 59(a) as "rigorous." Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004). Accordingly, the court is guided by the standard for reviewing an RCFC 59(a) motion for reconsideration in its adjudication of the government's motion.

In Northern States Power Co. v. United States, the court stated that an evaluation of a motion for reconsideration is "guided by the general understanding 'that, at some point, judicial proceedings must draw to a close and the matter deemed conclusively resolved . . . .'" 79 Fed. Cl. 748, 749 (2007) (quoting Withrow v. Williams, 507 U.S. 680, 698 (1993)). Pursuant to

RCFC 59(a), the court may grant reconsideration "to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." The "decision whether to grant reconsideration lies largely within the discretion of the district court," Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990), and courts must "consider motions for rehearing with exceptional care," Carter v. United States, 518 F.2d 1199, 1199 (Ct. Cl. 1975).

     A motion for reconsideration "must be based 'upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court.'" Prati v. United States, 82 Fed. Cl. 373, 376 (2008) (quoting Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999)). "Manifest" means "clearly apparent or obvious." Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002). The moving party "must support the motion by a showing of extraordinary circumstances which justify relief." Fru-Con Constr. Corp., 44 Fed. Cl. at 300. "Specifically, the moving party must show: (1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice." Matthews v. United States, 73 Fed. Cl. 524, 526 (2006) (citing Griswold v. United States, 61 Fed. Cl. 458, 460-61 (2004)). Therefore, a court "will not grant a motion for reconsideration if the movant 'merely reasserts . . . arguments previously made[,] . . . all of which were carefully considered by the Court.'" Ammex, Inc., 52 Fed. Cl. at 557 (quoting Principal Mut. Life Ins. Co. v. United States, 29 Fed. Cl. 157, 164 (1993) (first & third alterations in original). A party "may not prevail on a motion for reconsideration 'by raising an issue for the first time on reconsideration when the issue was available to be litigated at the time the complaint was filed.'" Six v. United States, 80 Fed. Cl. 694, 697 (2008) (quoting Matthews, 73 Fed. Cl. at 525). Similarly, a motion for reconsideration "should not be based on evidence that was readily available at the time the motion was heard." Seldovia Native Ass'n v. United States, 36 Fed. Cl. 593, 594 (1996). Additionally, where a party seeks reconsideration on the ground of manifest injustice, it cannot prevail unless it demonstrates that any injustice is "apparent to the point of being almost indisputable." Pac. Gas & Elec. Co. v. United States, 74 Fed. Cl. 779, 785 (2006).

## II. THE GOVERNMENT'S MOTION

     The government seeks amendment of the court's May 29, 2009 merits decision because, it asserts, "the Court's order, as written, could be construed to infringe upon the Coast Guard's lawful discretion to procure its IT support services for audit supporting financial management systems."[1] Def.'s Mot. 1. It states that "the Court's order appears to require that the Coast Guard

---

[1] The court determined that the Coast Guard's issuance of Modifications P00030 and P00032 ("Modifications 30 and 32") to the Systems Engineering and Technical Services ("SETS") II task order transferred to QSS audit-supporting federal financial management system services that fell outside the scope of the SETS II task order. As a result, the court concluded that these modifications effectively constituted a new, standalone procurement that was made after the ordering period for the underlying Information Technology Omnibus Procurement II

recompete the services at issue," id. at 2 (citing Global Computer Enters., Inc., slip. op. at 151), and expresses concern that the court's decision precludes it from awarding future sole-source contracts pursuant to the Armed Services Procurement Act, 10 U.S.C. § 2304(c) (2006), see id. ("To the extent that the Coast Guard deems it necessary, in the future, to issue a sole source contract to GCE or another entity for IT support for the Coast Guard's audit supporting financial management systems, the Coast Guard should not be precluded from doing so through an injunction in this case, because the issues in this case were more narrow."); see also Def.'s Reply Pl.'s Resp. Def.'s Mot. ("Def.'s Reply") 2 ("Although we are not asserting, for purposes of this motion, that these circumstances presently exist, it is possible that, in the future, the Coast Guard may need to lawfully procure IT support services for audit supporting financial management systems without using competitive procedures."). According to the government, the "main issue in this case was not the Coast Guard's failure to use competitive procedures generally, but rather, the Coast Guard's transfer of the IT support services for its audit supporting financial management systems to the SETS II task order."[2] Def.'s Reply 3. The government indicates that it is uncertain of the meaning of the term "fair and open competition" that the court employed,[3] id. at 4; see Global Computer Enters., Inc., slip op. at 151, and requests that the court "clarify that it is not enjoining the Coast Guard from doing anything that is consistent with the Court's May [29], 2009 opinion and order," Def.'s Mot. 3; see also Def.'s Reply 4 (explaining that the Coast Guard is faced "with the very real problem of complying with an order it does not understand"). According to the government, the court "would err . . . by interfering with the Coast Guard's lawful discretion" to procure lawfully IT support services for audit-supporting federal financial management system services through noncompetitive means, if the Coast Guard deems such measures necessary. Def.'s Reply 2-3; see also id. at 3 (arguing that "it would be a 'manifest injustice' for the Court to require that [audit-supporting federal financial management system]

---

contract expired and, therefore, violated the Competition in Contracting Act of 1984 ("CICA"), Pub. L. No. 98-369, 98 Stat. 494 (codified as amended at 31 U.S.C. §§ 3551-3556 (2006)). See Global Computer Enters., Inc., slip op. at 100-29. The court also determined that the Coast Guard's issuance of these modifications violated FAR § 19.502-2, referred to as the "Rule of Two." See id. at 129-36.

[2] In fact, the government emphasizes that "GCE was performing IT support services for the Coast Guard's audit supporting financial management systems pursuant to a non-competitive sole source contract before the Coast Guard attempted to shift some of that work to the SETS II task order." Def.'s Reply 3.

[3] The government notes that it is concerned that the court's use of the language "'fair and open competition' . . . . is undefined in the Government contracts context," Def.'s Reply 3, and reiterates that it is "unsure of the Court's intended meaning as the term is not contained in any procurement statutes or regulations," id. at 4. GCE responds that "'fair and open competition' may not correspond to a particular acquisition procedure in the [Federal Acquisition Regulation, but this] does not mean that it is somehow rootless or meaningless." Pl.'s Opp'n Def.'s Mot. ("Pl.'s Opp'n") 5.

services be competed"[4]).

GCE asserts that the government's concerns "do not involve 'the occurrence of an intervening change in the controlling law [or] the availability of previously unavailable evidence,' nor do they rise to the level of 'manifest injustice.' They are therefore insufficient to support amendment of the judgment under RCFC Rule 59(e)." Pl.'s Opp'n 1 (quoting Strategic Hous. Fin. Corp. v. United States, No. 06-741, 2009 WL 1538081, at *2 (Fed. Cl. May 29, 2009)) (alteration in original); see also id. at 3 (arguing that the government failed to address the factors a party must show to justify relief under RCFC 59(e)), 4 ("The Government makes no attempt to prove that any of [the] circumstances [required under RCFC 59(e)] apply, nor could it."). Instead, GCE argues, the government "simply asks the Court to preserve the Coast Guard's generic 'discretion to procure its IT support services for audit supporting financial management systems' however it sees fit, including, if the Coast Guard 'deems it necessary,' through noncompetitive processes." Id. at 3 (quoting Def.'s Mot. 1) (footnote omitted). GCE argues that the court's injunction "is closely tailored to the particular findings it made regarding the Coast Guard's unlawful action and the harms GCE suffered" and, as such, does not create a manifest injustice. Id. at 4.

GCE emphasizes that, "[f]rom the beginning of this case, [it] has sought the same thing: a fair chance to compete for the financial management systems work that the Coast Guard unlawfully awarded to QSS on a sole-source basis." Id. at 1-2. It notes that the relief ordered by the court "is no different from that ordered in comparable cases," id. at 4 (discussing CW Gov't Travel, Inc. v. United States, 61 Fed. Cl. 559 (2004), aff'd, 163 Fed. App'x 853 (Fed. Cir. 2005)), asserting that "[i]t is hardly a 'manifest injustice' for this Court to order the same relief ordered in comparable cases, particularly where it has justified the need for that relief with specific findings," id. at 5. GCE further claims that the government's asserted need for "discretion to reaward a sole-source contract or adopt some other non-competitive procedure rings hollow given that the Government actually had such discretion . . . but never felt the need to exercise it." Id. According to GCE, the government's arguments "turn[ the] CICA's strong and explicit presumption in favor of 'full and open competition' on its head." Id. (quoting 41 U.S.C.

---

[4] In its motion, the government never claims that it would suffer any manifest injustice stemming from the court's May 29, 2009 merits decision. See generally Def.'s Mot. (requesting clarification of the court's decision and expressing concern that the court's decision could be construed as interfering with an agency's discretion vis-à-vis government procurements). Rather, it is not until it filed its reply brief that the government asserts that requiring the Coast Guard to recompete the services discussed in the court's May 29, 2009 merits decision would constitute a manifest injustice. Def.'s Reply 3. But see Pl.'s Opp'n 4 (arguing that the government's "professed concerns about how the Court's wording 'could be construed' do not rise to the level of 'manifest injustice'" (footnote omitted)).

§ 253[5]).

### III. DISCUSSION

#### A.

As noted in Part I, supra, the party claiming manifest injustice must demonstrate that the injustice is "apparent to the point of being almost indisputable." Pac. Gas & Elec. Co., 74 Fed. Cl. at 785. The government believes that the court's May 29, 2009 merits decision could be construed as interfering with the Coast Guard's lawful discretion to procure audit-supporting federal financial management system services through noncompetitive means. See Def.'s Reply 2 (citing Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1384 (Fed. Cir. 2009), wherein the Federal Circuit recognized that "[t]he Supreme Court has warned against undue judicial interference with the lawful discretion given to agencies"). Although the government maintains that "[i]t would be a 'manifest injustice'" if the Coast Guard could not procure the services at issue in this case through noncompetitive means, id., its concerns are both hypothetical and premature. Indeed, the government does not explain how these concerns effectuate an outcome that creates an injustice that is "apparent to the point of being almost indisputable." Pac. Gas & Elec. Co., 74 Fed. Cl. at 785. As such, the government has not met its burden of demonstrating that amendment of the judgment is necessary to prevent manifest injustice, and its motion is therefore denied in part.

#### B.

In its June 16, 2009 order, the court requested a full round of briefing on the government's motion and indicated that "[i]f any clarification is, in fact, needed, then the court shall incorporate any clarification into the decision before it is unsealed." To the extent that the government seeks clarification of the May 29, 2009 merits decision, the court is receptive to providing an explanation so that the government may comply with the court's order. Construing the government's request as one for clarification, the court grants the government's motion in part. Nevertheless, the government's concerns are overstated.

First, the court is not attempting to infringe upon the Coast Guard's decision-making authority, and nothing in the court's May 29, 2009 merits decision explicitly indicates or implicitly suggests that the Coast Guard is proscribed from utilizing lawful noncompetitive procedures to procure necessary services. The administrative record in this case, as discussed in the court's May 29, 2009 merits decision, reflects the Coast Guard's clear intent in early 2007 to

---

[5] The provisions contained in title 10 of the United States Code, which are the military procurement equivalents to those contained in title 41 of the United States Code, see A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 133 n.7 (2006), apply to the Coast Guard. See 10 U.S.C. § 2303(a)(5). Section 253 of title 41 of the United States Code is analogous to 10 U.S.C. § 2304.

compete audit-supporting federal financial management system services. See Global Computer Enters., Inc., slip op. at 47-50. Ultimately, the Coast Guard's course of conduct–forgoing a solicitation and instead issuing Modifications 30 and 32 to the SETS II task order–violated the law, and the court cannot sanction those violations. In rendering its decision, the court did not pass judgment on any other Coast Guard actions, but the Coast Guard may not wholly insulate its actions behind a veil of agency discretion. Indeed, as GCE notes, the Coast Guard had the opportunity to–but ultimately did not–exercise its discretion by awarding a sole-source contract or adopting some type of noncompetitive procedure within the time frame spanning the court's issuance of a temporary restraining order and permanent injunction. See Pl.'s Opp'n 5.

Second, the term "fair and open competition" is neither anomalous nor peculiar in this court's jurisprudence. See, e.g., Ashbritt, Inc. v. United States, No. 08-473C, 2009 WL 1872153, at *31 (Fed. Cl. June 25, 2009) (recognizing that "the public interest is served by ensuring fair and open competition in the procurement process" (citing Cincom Sys. v. United States, 37 Fed. Cl. 266, 269 (1997))); HDM Corp. v. United States, 69 Fed. Cl. 243, 261 (2005) (acknowledging the plaintiff's argument that the public interest "ensur[es] fair and open competition in government contracts" and recognizing "an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement statutes and regulations"); CW Gov't Travel, Inc., 61 Fed. Cl. at 576 (determining that a "re-solicit[ing] the traditional travel services work [at issue] will serve the public interest by ensuring fair and open competition in public contracts"); Int'l Res. Recovery, Inc. v. United States, 60 Fed. Cl. 1, 8 (2004) ("Generally the public interest is served by ensuring fair and open competition in the procurement process." (citing Cincom Sys., 37 Fed. Cl. at 269)); Gentex Corp. v. United States, 58 Fed. Cl. 634, 654 (2003) (same); Razorcom Teleph & Net, LLC v. United States, 56 Fed. Cl. 140, 143-44 (2003) (recognizing that the CICA "protects fair and open competition, but it does not wholly abandon an assumption of Darwinian principles"); Ceres Envtl. Servs., Inc. v. United States, 52 Fed. Cl. 23, 40 (2002) (recognizing that the public "has an interest . . . in the fair and open competition afforded under the procurement laws"); Labat-Anderson Inc. v. United States, 50 Fed. Cl. 99, 110 (2001) (indicating that "the public interest is served by allowing the government to proceed with contracts awarded in a manner consistent with fair and open competition"); JWK Int'l Corp. v. United States, 49 Fed. Cl. 364, 370 (2001) (acknowledging that "the public has an interest both in retaining the opportunity to air grievances in Court as well as in the fair and open competition afforded under the procurement laws," and recognizing a "substantial public interest in allowing the government to proceed with contracts awarded, in a manner consistent with fair and open competition"); see also Compliance Corp. v. United States, No. 91-5048, 1992 WL 56946, at *2 (Fed. Cir. Mar. 26, 1992) (describing the federal procurement system as one comprised of "full, fair, and open competition"). Therefore, requiring the Coast Guard to ensure a "fair and open competition," Global Computer Enters., Inc., slip op. at 151, should cause no confusion as this term has been previously employed to describe the procurement system in which the Coast Guard participates.

Third, directing the Coast Guard to recompete the services at issue in this case also comports with orders in comparable cases. In CW Government Travel, Inc., the court

determined that the addition of traditional travel services to a contract via modification when those services were not part of the original contract at issue constituted a cardinal change, and the United States Army ("Army"), the court concluded, violated the CICA by failing to compete those services.  61 Fed. Cl. at 576.  Granting injunctive relief to the plaintiff, the court further required that the Army "re-solicit the traditional travel services work," which it determined "will serve the public interest by ensuring fair and open competition in public contracts."  Id.  Similarly, in Ashbritt, Inc., the court awarded limited injunctive relief, having concluded that "the protestor has been prejudiced by . . . manifold procurement errors[ and, a]bsent these errors, [it] would have had a substantial chance of awards . . . ."  2009 WL 1872153, at *31.  Although the Ashbritt, Inc. court recognized "the Federal Circuit's recent guidance in Axiom [Resource Management, Inc.] that '[t]he Supreme Court has warned against undue judicial interference with the lawful discretion given to agencies,'" id. at *32 (quoting 563 F.3d at 1384) (alteration in original), and noted that "it is not for this Court to dictate the particulars of each step the agency should take to remedy what transpired," it nevertheless directed the United States Army Corps of Engineers "to procure its services in accordance with statute and regulation and to exercise its discretion reasonably," id.

### IV.  CONCLUSION

In light of the foregoing, the government's motion is **GRANTED IN PART** and **DENIED IN PART**.  Although the court's May 29, 2009 merits decision is not intended to infringe upon the Coast Guard's lawful discretion to procure audit-supporting federal financial management system services, the court concludes that clarification is warranted.  Therefore, the court modifies its decision by replacing the last sentence of Part V, paragraph 2 ("The Coast Guard must recompete these services through a fair and open competition."), which is located on page 151 of the slip opinion, with the following sentence: "The Coast Guard must procure these services in accordance with the law and in a manner that preserves the integrity of the procurement process, exercising its discretion in a reasonable manner."  In accordance with its June 16, 2009 order, the court shall incorporate this change into the unsealed version of its May 29, 2009 merits decision.

The court has filed this decision under seal.  The parties shall confer to determine proposed redactions that are agreeable to all parties.  Then, **by no later than Thursday, July 30, 2009**, the parties shall file a joint status report indicating their agreement with the proposed redactions and **attaching a complete copy of the court's decision with all redactions clearly indicated**.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney<br>
MARGARET M. SWEENEY<br>
Judge